Jones, J.
 

 The general demurrer of the relator to the joint answer searches the record, and the well pleaded allegations contained both in the petition and in the joint answer are thereby confessed to be true.
 

 Counsel on both sides agree that the crucial question to be determined is: Do the Pure Food and Drug Laws of Ohio apply to the sale of spirituous liquors by the Ohio Department of Liquor Control? Or, stating it more specifically, are the respondents amenable to and are they required to comply with the Pure Food and Drug Laws in respect to the labeling or selling of “whiskey”, as defined in Sections 5777, 5778 and 5784, General Code?
 

 Relying upon the holding in the case of
 
 State
 
 v.
 
 Hutchinson,
 
 56 Ohio St., 82, 46 N. E., 71, that whiskey is a drug within the meaning of the Pure Food and
 
 *189
 
 Drug Law, the relator contends that the state, while engaging in the sale of whiskey, is exercising functions which are not governmental but proprietary in character, in that the state carries on a private enterprise for profit. The relator therefore argues that the Department of Liquor Control is amenable to suit and must comply with the Pure Food and Drug Laws of the state, by selling and labeling “whiskey” in conformity with its drug definition prescribed by the following section of that law:
 

 “A drug is adulterated within the meaning of this chapter (1) if, when sold under or by a name recognized in the tenth decennial revision of the United States Pharmacopoeia, or in the fifth edition of the National Formulary, it differs from the standard of strength, quality or purity laid down therein; * * * (4) if it is an imitation of, or offered for sale under the name of another article; * * Section 5777, General Code.
 

 As a corollary to that section, it is insisted that whiskey, when sold under the name of whiskey, must be of the standard proof and must be stored in charred wood containers for not less than four years, as prescribed in the following definition of “whiskey”, given in the tenth decennial revision of the United States Pharmacopoeia, to wit: “Whiskey is an alcoholic liquid obtained by the distillation of the fermented mash of wholly or partly malted cereal grains, containing not less than 47 per cent, and not more than 53 per cent, by volume of C2H6OH, at 15.56° C. It must have been stored in charred wood containers for a period of not less than four years.” Since the joint answer of the respondents admits that eighty-five per cent, of the spirituous liquors sold by the state stores do not meet those requirements and that this per centum includes many imported liquors such as Scotch and Irish whiskeys and brandies which do' not conform to the standard of age and strength required by Section
 
 *190
 
 5777, General Code, in that such liquors are either less than ninety-four degrees proof (forty-seven per cent, by volume of ethyl alcohol) or have not been aged in charred wood for at least four years, the relator contends that his demurrer to the joint answer should be sustained and that the respondents should be compelled to comply with the aforesaid provisions of the general act relating to Pure Pood and Drugs.
 

 On the other hand, the respondents claim that they are not amenable to the Pure Pood and Drug Laws, since the Liquor Control Act, Section 6064-1
 
 et seq.,
 
 General Code, relating to the control of and traffic in intoxicating liquors, is a special and all-inclusive act controlling the traffic in all kinds of intoxicating liquors whatever may be their character or however they may be defined; and that, so long as the board has complied with the federal regulations, the board has violated no legal requirement which may be enforced by the extraordinary writ of mandamus.
 

 The Liquor Control Act, Section 6064-1
 
 et seq.,
 
 General Code (115 Ohio Laws, pt. 2,118), was passed December 22, 1933, and is a much later enactment than Section 5777, General Code, of the Pure Food and Drug Act. It is a fundamental principle of law that if there is inconsistency or incompatibility between the earlier and later act, the provisions of the latter govern and must be read as an exception to the provisions of the earlier statute.
 
 City of Cincinnati
 
 v.
 
 Holmes, Admr.,
 
 56 Ohio St., 104, 46 N. E., 514;
 
 Thomas, Sheriff,
 
 v.
 
 Evans,
 
 73 Ohio St., 140, 76 N. E., 862. If we accede to the construction that counsel for relator seeks to give to the Pure Pood and Drug Laws, we think there would exist an obvious incompatibility between the two. It is manifest that the term “whiskey” in the drug act applies to that liquid only .when manufactured and sold as a drug. That purpose is clearly displayed by the Pure Food and Drug Laws, Section 5774, General Code; whereas the Liquor Control Act
 
 *191
 
 deals with all intoxicating and spirituous liquors, including whiskey, when such liquors are “fit for use for beverage purposes * * * by whatsoever name called.” Section 6064-1, General Code.
 

 It is a fundamental principle of law that recourse to the title of an act may be had as an aid in the construction of the law. The title of the Liquor Control Act declares that it is an act “to provide a system of control of the manufacture and importation of and traffic in * * * intoxicating liquors in this state.”
 

 Section 1 of the act recites that the phrase “intoxicating liquor,” as used in that act, “includes any and all liquids and compounds which contain more than 3.2 per centum of alcohol by weight and are fit for use for
 
 beverage purposes, * * * by whatsoever name called.”
 
 (Italics ours.) It also defines the term “spirituous liquor” as including
 
 “all
 
 intoxicating liquors containing more than seventeen per centum alcohol by volume.” (Italics ours.) The Pure Food and Drug Law in respect to whiskey is manifestly confined to its use and sale as a drug; while the Liquor Control Act is confined to the use of intoxicating liquors
 
 as a beverage,
 
 and by its express terms is made to apply to all intoxicating liquors trafficked in and is not so limited as to exclude those coming within the pharmacopoeial definition. In passing the Liquor Control Act, the state of Ohio therefore assumed entire control of the traffic in all intoxicating liquors and it adopted a special system or scheme governing the manufacture and sale of intoxicating liquors as a beverage, whatsoever may be their proof or their alcoholic content. It dealt particularly with spirituous liquors containing more than seventeen per centum of alcohol by volume, thereby evincing the purpose that volume was not controlled by the pharmacopoeial definition of whiskey as a drug.
 

 Furthermore, the Liquor Control Act does not allude to the provisions of the Pure Food and Drug Laws.
 
 *192
 
 Section 3 (Section 6064-3, General Code) of the Liquor Control Act gives to the Board of Liquor Control extensive powers to employ rules, regulations and standards to carry out the provisions of the act, including the power to adopt rules and regulations determining the' nature, form and capacity of all packages and bottles used for intoxicating liquor to be kept or sold. It invests the board with power to adopt rules governing, consistently with the law, the form of all seals and labels to be used thereon.
 

 If the board is not amenable to the provisions of Section 5777, General Code, a section of the Pure Food and Drug Laws, neither is it amenable, for the reasons stated, to Section 5784, General Code, a section of the same laws, in respect to labeling, even if we were to concede that labeling bottles as straight or blended whiskeys be a false labeling. The Liquor Control Act has occupied that field by specifically prescribing in Section 3 its special rule governing labeling as follows: “The board shall require the label on every package and bottle to state the ingredients in the liquor therein contained together with its age and alcoholic content. ’ ’ Since this requirement has been complied with by the board, it has used this form of labeling,
 
 ‘ ‘
 
 consistently with the law,” as Section 3 of the act requires.
 

 It is admitted that a large per centum of the imported whiskey sold in the state stores is of greater age but of lower proof than is required by the pharmacopoeial definition. It is hardly conceivable that it was the purpose of the Legislature to adopt a system of liquor control which would deny the public the right to buy and sell these imported whiskeys however aged they may be, because they graded less than ninety-four proof; yet this would be the ultimate effect were we to construe the Liquor Control Act as counsel for the relator desire.
 

 A great portion of the briefs of counsel is devoted to the argument that, in its method of sale of intoxi
 
 *193
 
 eating liquors, the state has yielded its sovereign functions and entered into a proprietary enterprise for its own profit. In contending that it has done so, counsel for the relator cite the cases,
 
 State of South Carolina
 
 v.
 
 United States,
 
 199 U. S., 437, 26 S. Ct., 110, 50 L. Ed., 261, and the
 
 State of Ohio
 
 v.
 
 Helvering,
 
 292 U. S., 360, 54 S. Ct., 725, 78 L. Ed., 1307, in support of the proposition that the state, by thus engaging in business like a private individual, is not exercising governmental functions and is not immune from suit. However, it is unnecessary to decide that feature of the case, since it is obvious that, whether it is exercising governmental or proprietary functions, in either case under our construction of this Liquor Control Act, the state and its Board of Liquor Control are not amenable to the sections of the Pure Food and Drug Laws.
 

 Since the demurrer filed by the relator to the joint answer of the respondents searches the entire record, we are of the opinion that the petition is insufficient in law and does not state a cause of action. The demurrer to the joint answer of respondents is overruled and the writ prayed for will be denied.
 

 Writ denied.
 

 Weygandt, C. J., Stephenson, Williams, Matthias, Day and Zimmerman, JJ., concur.