Matthias, J.
 

 The paramount issue presented by the demurrer to the petition is the constitutional validity of Section 6064-67, General Code, and particularly whether that statute is violative of Section 8 of Article I of the federal Constitution, in that it constitutes an unreasonable and unfair burden on interstate commerce, and is violative of Section 1 of the Fourteenth Amendment of the federal Constitution, in that it denies the equal protection of the law and deprives the relator of property without due process of law. It is the contention of the state that the provisions of Section 2 of the Twenty-first Amendment of the federal Constitution supersede and render ineffective the provisions of Section 8 of Article I of that Constitution in so far as the latter may have any application to the shipment of intoxicating liquors in interstate commerce. It is the position of the state upon the issue presented that, by reason of the adoption of the Twenty-first Amendment to the federal Constitution, the several states now have complete power and full authority to prohibit shipment of intoxicating beverages into each such state and hence may provide and enforce any regulation of such traffic without limitation or restraint. It is manifest that the decision of that question will he the determination of the principal issue in this controversy.
 

 Many cases have been cited involving the applica
 
 *314
 
 tion of the provisions of the Webb-Kenyon Act restricting shipment of intoxicating liquors in interstate commerce, which would be quite pertinent in the absence of the recent constitutional amendment; but, in the view we take of the force and effect of that amendment, it is wholly unnecessary to consider the provisions of the Webb-Kenyon Law or to discuss the numerous decisions applying and enforcing that act, announced prior to the adoption of the Twenty-first Amendment. Section 2 of that Amendment is as follows: “The transportation or importation into any State, Territory, or possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited.”
 

 Let us examine the provisions of the Ohio Liquor Control Act in so far as they affect the consideration of this case, and ascertain its purpose and scope and also the duties assigned to and the powers conferred upon the Department of Liquor Control and the Tax Commission of the state. It is a measure designed to regulate the traffic in beer and other intoxicating beverages ; and to effectuate that purpose it excludes from engaging in that traffic all persons except those to whom licenses are issued by the Department of Liquor Control pursuant to and under the authority conferred by the law. Specific regulatory provisions and restrictions are made applicable to the importation and transportation of beer, wine and spirituous liquor. Under this act, beer manufactured outside of the state cannpt be imported into this state by anyone who is not the holder of a proper permit issued by the Department of Liquor Control of this state. Pursuant to the plan adopted, no tax is imposed upon the manufacturer of beer imported into Ohio; but the tax is imposed upon the original consignee of that beer in Ohio. Hence that original consignee must be a distributor licensed by the Ohio Department of Liquor Control
 
 *315
 
 with a place of business in this state. There is no attempt to tax the brewer or manufacturer of such beer; but the tax is imposed upon the distributor importing into Ohio beer which is manufactured elsewhere. It is that action that is challenged as being violative of constitutional rights in the respect heretofore stated.
 

 Every argument advanced by the relator upon this branch of the case has been answered adversely by the unanimous decision of the Supreme Court of the United States in the case of
 
 State Board of Equalization of California et al.
 
 v.
 
 Young’s Market Co. et al.,
 
 which was announced November 9, 1936, and is found in 299 U. S., 59, 81 L. Ed., 37. In that suit, the validity of the statute of the state of California and regulations thereunder imposing a license fee of $500 for the privilege of importing beer were challenged as violative of rights guaranteed by the federal and state Constitutions. The plaintiffs were engaged in selling at wholesale beer imported from other states. Each refused to apply for an importer’s license, claiming that the requirement discriminated against the wholesalers of imported beer and that the statute, therefore, violated both the commerce clause and the equal protection clause of the federal Constitution. The opinion of Mr. Justice Brandéis discloses that in that case the principal contention of the plaintiffs was that the exaction of an importer’s license fee was violative of the commerce clause. There, as in the case at bar, the language of Mr. Justice Brandéis is so applicable and so decisive of the principal contention made in the instant case, and is so concise in statement, that it is deemed advisable to quote in full that portion of the opinion.
 

 “The plaintiffs argue that, despite the Amendment, a state may not regulate importations except for the purpose of protecting the public health, safety or morals; and that the importer’s license fee was not
 
 *316
 
 imposed to that end. Snrely the state may adopt a lesser degree of regulation than total prohibition. Can it be doubted that a state might establish a state monopoly of the manufacture and sale of beer, and either prohibit all competing importations, or discourage importation by laying a heavy impost, or channelize desired importations by confining them to a single consignee? Compare
 
 Slaughter House Cases,
 
 16 Wall., 36, 21 L. Ed., 394;
 
 Vance
 
 v.
 
 W. A. Vandercook Co.,
 
 170 U. S., 438, 447, 42 L. Ed., 1100, 1104, 18 S. Ct., 674. There is no basis for holding that it may prohibit, or so limit, importation only if it establishes monopoly of the liquor trade. It might permit the manufacture and sale of beer, while prohibiting absolutely hard liquors. If it may permit the domestic manufacture of beer and exclude all made without the state, may it not, instead of absolute exclusion, subject the foreign article to a heavy importation fee? Moreover, in the light of history, we cannot say that the exaction of a high license fee for importation may not, like the imposition of the high license fees exacted for the privilege of selling at retail, serve as ah aid in policing the liquor traffic. Compare
 
 Phillips
 
 v.
 
 Mobile,
 
 208 U. S., 472, 479, 52 L. Ed., 578, 581.
 

 “The plaintiffs argue that limitation of the broad language of the Twenty-first Amendment is sanctioned by its history; and by the decisions of this court on the Wilson Act, the Webb-Kenyon Act and the Reed Amendment. As we think the language of the amendment is clear, we do not discuss these matters. The plaintiffs insist that to sustain the exaction of the importer’s license fee would involve a declaration that the amendment has, in respect to liquor, freed the states from all restrictions upon the police power to be found in other provisions of the Constitution. The question for decision requires no such generalization.”
 

 The contention in that case, that the statute and
 
 *317
 
 regulations adopted pursuant thereto were violative of the equal protection clause of the Constitution, was conclusively disposed of by the very terse statement that “a classification recognized by the Twenty-first Amendment cannot be deemed forbidden by the Fourteenth.” It is further observed that “the classification in taxation made by California rests on conditions requiring difference in treatment. * * * The brewer of the domestic article may be required to pay a license fee for the privilege of manufacturing it. * * * The brewer of the foreign article cannot be so taxed; only the importer can be reached.”
 

 The validity of Section 40 of the Michigan Liquor Control Act has recently been sustained in the United States District Court for the Western Division of Michigan, in which three judges participated.
 
 (Zukaites
 
 v.
 
 Fitzgerald, Governor,
 
 unreported.)
 

 It was because of that provision of the Michigan statute that the resolution of the Ohio Tax Commission was issued pursuant to the authority of Section 6064-67, General Code. In the course of the opinion in the
 
 Zukaites case,
 
 it is said: “It is apparent that the statute and regulations complained of impose discriminatory burdens upon out-state liquor, but we are not convinced that such discriminations are so wholly unrelated to the powers now returned to the states by the Twenty-first Amendment to regulate or forbid the importation of liquors into Michigan that we can say with that clearness which is imperative that such rules and regulations are unconstitutional.”
 

 In reaching its conclusion, that court followed and applied the decision of the Supreme Court of the United States in the
 
 Young’s Market Co. case, supra,
 
 and held that neither the commerce clause nor the equal protection clause of the federal Constitution was violated by the Michigan statute or regulations.
 

 It is urged that Section 6064-67, General Code, and
 
 *318
 
 the regulations of the Tax Commission adopted pursuant thereto constitute an invalid delegation of legislative power to the Tax Commission, in violation of Section 1 of Article II and Section 5 of Article XII of the state Constitution. Let us examine that section of the statute to ascertain the nature and extent of-authority conferred upon the Tax Commission and then determine whether that authority may be properly denominated legislative power.
 

 That section of the statute, by reason of its terms and effect, has been referred to as a retaliatory act. There is nothing new or novel about such a statutory provision. Though the constitutionality thereof was not in issue, this court recognized as valid a statute retaliatory in character and of similar import and effect, by enforcing it.
 
 State, ex rel. New England Mutual Life Ins. Co.,
 
 v.
 
 Reinmund,
 
 45 Ohio St., 214, 13 N. E., 30. Under certain conditions stated in Section 6064-67, the Legislature not merely authorizes but directs the levy and collection of certain taxes, fees and charges. Nothing is left to the commission to do with reference to the imposition of such additional taxes, fees and charges except to ascertain the facts. If it be found that certain conditions exist, then the additional taxes, fees and charges are to be imposed and collected. In this provision, there is nothing left to the discretion of the commission. The condition, the existence of which results in the imposition of such extra taxes, fees and charges, is the levy and collection of taxes, fees and charges levied and enforced by another state against products of Ohio manufacturers of wine or brewers of beer and other malt liquors, when such products are sold in or delivered or shipped into that state which are in excess of the taxes, fees and charges levied and collected on the products of manufacturers or brewers in that state. If and when it is ascertained that such extra taxes,
 
 *319
 
 fees and charges are levied in snch other state against the enumerated Ohio products sold in that state, it becomes the mandatory duty of the Tax Commission in this state to likewise collect such additional taxes, fees and charges “in the same proportion or in the same amount as taxes, fees and charges, levied and collected in said state upon or against the products of Ohio manufacturers of wine or manufacturers or brewers are in excess of those levied and collected on the products of manufacturers and brewers of said state.” Conferring such authority and giving such direction to the Tax Commission does not constitute an abandonment by the law-making power of its legislative function, or a delegation thereof to the commission.
 

 Language used by the Supreme Court of Illinois in. the case of
 
 Home Ins. Co.
 
 v.
 
 Swigert, And.,
 
 104 Ill., 653, in the consideration of a statute of similar import, is quite pertinent. The court there said:
 

 “Where the contingency upon which the ultimate operation of a law is made to depend, consists of a vote of the people, or the action of some foreign deliberative or legislative body, as is the case here, it is erroneous to suppose the Legislature in such case abandons its own legislative functions, or delegates its powers to the people in the one case, or to such foreign deliberative or legislative body in the other.”
 

 In the extent of the authority conferred upon the commission, this statute is quite limited in comparison with statutory provisions which have been considered by this court in various cases and there held as valid when challenged upon the ground that they constituted a delegation of legislative power. A discussion or even an enumeration of the cases involving the question of the delegation of legislative power would serve no useful purpose. Undoubtedly there are inconsistencies difficult of reconciliation in the decisions involv
 
 *320
 
 ing this question. Some of the eases lose sight of the test which, when applied, is determinative of the question. This test was pointed out by Judge R-anney in
 
 Cincinnati, W. & Z. Rd. Co.
 
 v.
 
 Commrs. of Clinton County,
 
 1 Ohio St., 77, 88, when he said: “The true distinction, therefore, is between the delegation of power to make the law, which necessarily involves a discretion as to what it shall be, and conferring an authority or discretion as to its execution, to be exercised under and in pursuance of the law. The first cannot be done; to the latter no valid objection can be made.”
 

 Upon the matter of delegation of legislative power, a test applied by the Supreme Court of the United States is stated in
 
 Mutual Film Corp.
 
 v.
 
 Industrial Commission of Ohio,
 
 236 U. S., 230, 59 L. Ed., 552, 35 S. Ct., 387, as follows: “Undoubtedly the Legislature must declare the policy of the law and fix the legal principles which are to control in given cases; but an administrative body may be invested with the power to ascertain the facts and conditions to which the policy and principles apply. If this could not be done there would be infinite confusion in the laws, and in an effort to detail and to particularize, they would miss sufficiency both in provision and execution.”
 

 As we have previously observed, in the instant case not only was the legislative policy declared and the legal principle applicable fixed by the statute, but specific action of the commission was authorized and directed upon the existence of certain ascertainable facts and conditions, which were clearly and definitely set forth. When those facts and conditions arise and are found to exist, the exactions of the law become effective. There is here no delegation of legislative power, but only the authority to execute it and the express direction to do so in the manner prescribed by the statute itself.
 

 In the case of
 
 State
 
 v.
 
 Arluno,
 
 — Iowa, — , 268
 
 *321
 
 N. W., 179, the Supreme Court of Iowa had before it the question of the constitutional validity of the Liquor Control Act of that state. That statute, just as the Ohio law, was enacted in the exercise of the state’s police power. It made it unlawful “to manufacture for sale, sell, offer or keep for sale, possess, and/or transport vinous, fermented, spirituous or alcoholic liquor * * * for any purpose whatsoever, except upon the terms, conditions, limitations and restrictions set forth herein.”
 

 It was contended in that case that the reservation of the power to import liquor into the state by the Iowa Liquor Control Commission, and a refusal to permit liquor to be imported by a person lawfully owning and possessing the same in a sister state was a violation of the interstate commerce clause of the federal Constitution. It was there held that the law forbidding any importation of intoxicating liquor otherwise than upon the terms, conditions, limitations and restrictions imposed thereby in nowise violated the federal Constitution.
 

 It is contended further that Section 6064-67, General Code, and the regulations adopted pursuant thereto are violative of Section 5 of Article XII of the Constitution of the state of Ohio because of failure to state the object of the tax imposed, to which only it is to be applied. In the determination of that question, the provisions of Section 6064-67, General Code, must be considered with the other sections of the Liquor Control Act, for all are
 
 in pari materia.
 
 The language of Minshall, J., in the opinion in the case of
 
 Ashley
 
 v.
 
 Bryan,
 
 49 Ohio St., 504, 31 N. E., 721, is quite pertinent. In discussion of a claim that a particular statute was violative of Section 5 of Article XII of the Constitution, he said: “It is not necessary that the object should be stated in the very statute imposing the tax; it is sufficient, we apprehend, if the
 
 *322
 
 object distinctly appear from the statute read in connection with some other provision found elsewhere in the statutes of the state.”
 

 That all taxes provided for and authorized by the Liquor Control Act are for the general revenue funds of the state is not only set forth in the title as one of the purposes of the act, but it is specifically stated in Section 6064-44, General Code (a portion of the Liquor Control Act), as follows: “Moneys received into the state treasury from the taxes levied, penalties assessed and sums recovered under the provisions of this act shall be credited to the general revenue fund therein. ’ ’
 

 It is our conclusion, therefore, that the provisions of the statute and the regulation adopted pursuant thereto by the state Tax Commission, which has been challenged by the relator, are not violative of any provision of the state or federal Constitution; but, on the contrary, in the respects presented and considered in this case, are valid and enforceable! It follows that the demurrer to the petition is sustained and a writ is' denied.
 

 Writ di&ydéct.
 

 Weygandt, C. J., Jones, Day, Zimmerman, Williams and Myers, JJ., concur.