AUTO CITY BREWING CO. *v.* GRUICH.

GRUICH *v.* AUTO CITY BREWING CO.

1. FRAUDS, STATUTE OF—CONTRACT OF LIABILITY FOR DEBT OF ANOTHER.

In order to hold one person liable for the debt of another, it must be because of some agreement, contract or promise to that effect and there must be some note or memorandum in writing to that effect, signed by the party to be charged or by someone duly authorized by him to do so (3 Comp. Laws 1929, § 13417).

2. INTOXICATING LIQUORS—MANUFACTURERS—GIFTS TO VENDORS.

A manufacturer of beer cannot legally aid or assist any other vendor of beer by gift, loan of money, or any other valuable thing, in obtaining a license; nor is it lawful for a vendor

---

Contract of liability for debt of another as being within the statute of frauds, see Restatement, Security, § 89.

of beer to accept the same (Act No. 8, § 30, Pub. Acts 1933 [Ex. Sess.]).

3. SAME—MANUFACTURERS—CONTRACTS TO AID VENDORS.

A contract with a manufacturer of beer in this State contrary to statutory provisions prohibiting it from aiding or assisting any other vendor by gift or loan of money or other valuable thing is void and no recovery may be had thereunder for money expended for labor and material (Act No. 8, §§ 30, 31, Pub. Acts 1933 [Ex. Sess.]).

4. SAME—COMPLIANCE WITH STATUTE.

The manufacture, sale, transporting, importing, or possession of alcoholic liquor by any person in this State who has not complied with the provisions of the liquor control act is unlawful (Act No. 8, § 32, Pub. Acts 1933 [Ex. Sess.]).

5. SAME—GUARANTY—CONTRACT IN VIOLATION OF STATUTES.

Arrangement whereby manufacturer of beer sought to hold liable the guarantor of account of party who was not a licensed distributor of beer in either Michigan or Ohio but who was the sole agent of a licensed distributor for sale of manufacturer's beer in Ohio constituted a subterfuge to evade the law of both States prohibiting a manufacturer from assisting any other vendor by gift or loan of money (Act No. 8, § 30, Pub. Acts 1933 [Ex. Sess.]).

6. SAME—CONSTITUTIONAL LAW—IMPORTATION INTO A STATE.

A State may forbid all importations of alcoholic liquor which do not comply with conditions prescribed by State laws, if the State allows imported liquors to compete with domestic on equal terms, without violating either the commerce or equal protection clauses of the Constitution of the United States (U. S. Const. art. 1, § 8, cl. 3; am. 14, § 1).

7. SAME—CONSTITUTIONAL LAW—ILLEGAL CONTRACTS—INTERSTATE COMMERCE—EQUAL PROTECTION.

An arrangement whereby a manufacturer of beer aids another vendor thereof which is determined to be illegal under a State statute regulating importation of intoxicating liquor into the State is not relieved of the consequences attaching to such illegality because of the commerce clause or the equal protection clause of the Constitution of the United States in view of the amendment repealing the so-called prohibition amendment (U. S. Const. art. 1, § 8, cl. 3; am. 14, § 1; am. 18; am. 21, § 2).

8. SAME—GUARANTY—BEER DISTRIBUTOR.

Brewing company was not entitled to recover under note and chattel mortgages executed by defendant who had guaranteed the account of an individual who was to become a distributor of brewing company's beer in Ohio where such individual did not become such a distributor but operated as sole agent for sale of plaintiff's beer under party who obtained license there as a distributor where it does not appear that guarantor promised orally or in writing to pay plaintiff for beer it sold anyone other than named individual.

9. CANCELLATION OF INSTRUMENTS—ILLEGAL CONTRACTS—FAILURE OF CONSIDERATION.

Decree cancelling note and chattel mortgages given by defendant to plaintiff brewing company as security for defendant's guaranty of account of one who was to become a distributor of plaintiff's beer in State of Ohio, being held by original payee and mortgagee, because of entire failure of consideration, was proper, where it appears a different party became such distributor and party whose account had been guaranteed by defendant became the sole agent of such distributor, the arrangement being an illegal one.

Appeal from Wayne; Smith (Frank Day), J. Submitted January 6, 1942. (Docket Nos. 11, 12, Calendar Nos. 41,553, 41,554.) Decided April 6, 1942. Rehearing denied May 18, 1942.

Replevin by Auto City Brewing Company, a Michigan corporation, against Kariton Gruich. Bill by Kariton Gruich against Auto City Brewing Company, a Michigan corporation, to cancel chattel mortgages and notes and to restrain action of replevin. Cases consolidated. Decree for plaintiff Gruich. Defendant Auto City Brewing Company appeals. Affirmed.

*Harry S. Bennett* and *Maxwell I. Silverstein,* for plaintiff Gruich.

*Riseman, Lemke & Piotrowski,* for defendant Auto City Brewing Company.

BOYLES, J.   Kariton Gruich filed a bill of complaint against the Auto City Brewing Company in the circuit court for Wayne county, seeking cancellation of a certain promissory note and two chattel mortgages and asking for a permanent injunction restraining the Auto City Brewing Company from attempting to enforce collection of the note or foreclosure of the chattel mortgages. The court below granted the relief prayed for and the brewing company reviews by general appeal.

Gruich, the proprietor of a grocery and meat business in Detroit, claims that his friend, Peter Sandrene, entered into negotiations with the Auto City Brewing Company, a Michigan corporation, to have Sandrene obtain a distributor's permit in Ohio and to receive and sell Auto City Brewing Company beer in that State; that it developed that Sandrene did not have sufficient money or credit and that the brewing company was willing to finance Sandrene in procuring a distributor's permit in Ohio, provided he would secure the company to the extent of $1,000; that Gruich, being willing to guarantee credit to be extended to Sandrene to the extent of $1,000, executed a promissory note to the brewing company for that amount, payable in three months, which note was signed by Sandrene and Gruich as comakers; that, to secure the payment of said note, Gruich executed and delivered to the brewing company two chattel mortgages covering certain motor vehicles owned by Gruich; that said note and chattel mortgages were thereupon delivered to the Auto City Brewing Company and are still in its possession. Thus far, the facts seem to be not in dispute. Gruich claims that he was merely guaranteeing payment by Sandrene for credits to be extended to him, as distributor in Ohio, to the extent of $1,000. It seems to

be established that when Sandrene could not obtain
a distributor's permit in Ohio, due to his inability to
comply with the laws of that State, Sandrene con-
tacted the General Distributing Company of Akron,
Ohio, as a result of which General Distributing Com-
pany obtained an Ohio permit to distribute Auto City
Brewing Company beer in that State. Sandrene be-
came a salesman for the General Distributing Com-
pany and sold Auto City Brewing Company beer for
it on commission. The brewing company opened an
account with the General Distributing Company,
made sales of beer to it in Ohio, and received pay-
ments for beer from the distributing company. It is
admitted that no sales of beer were made at any
time to Sandrene except as agent for the distributing
company, and no claim is made that the Auto City
Brewing Company ever sold any beer to Sandrene
himself. Mr. Lemke, a director and vice-president
of the brewing company, and attorney for the brew-
ing company in conducting the negotiations herein
referred to, testified:

"*Mr. Riseman:* On that statement you are not
claiming any sales to Peter Sandrene.
  "*A.* No. I think they were all General Distribut-
ing Company."

Gruich never at any time entered directly into any
of the transactions between the brewing company
and the General Distributing Company and in fact
did not learn that the brewing company was selling
beer to the General Distributing Company until later
informed by the brewing company that shipments
had been unpaid for to the extent of $1,447.93. The
brewing company demanded payment of Gruich on
the note, Gruich denied liability, claiming that he
had never agreed to guarantee payment for any beer
sold to the distributing company. The brewing com-
pany started a replevin action in the circuit court

for Wayne county to foreclose the mortgages against Gruich; Gruich posted a bond to obtain return of the motor vehicles from the sheriff's possession, and instituted the present action to cancel the note and mortgages and to enjoin further proceedings in the replevin action. The cases were consolidated by stipulation, in the court below, agreeing that the decision in the instant case would control the result in the replevin.

The Auto City Brewing Company claims in substance that the beer shipped to Ohio was ordered by Mr. Sandrene, although admitting it was sold and shipped to the General Distributing Company; denies that the distributing company had paid for beer consigned to it at Akron, Ohio; claims that Sandrene guaranteed payment for the beer shipped to Ohio and that, therefore, Gruich was liable to the brewing company on his guaranty of Sandrene's indebtedness.

The brewing company relies for recovery upon the claim of a verbal guaranty to be inferred from the facts and circumstances. The so-called promissory note for $1,000 contains no intimation of a guaranty by Gruich to pay any obligation of Sandrene other than the fact that they both signed as comakers. Neither do the chattel mortgages which the brewing company seeks to foreclose indicate that they are anything other than chattel mortgage liens upon motor vehicles to secure the payment of the note. Mr. Lemke testified that when it was found that Mr. Sandrene could not obtain a distributor's permit in Ohio, it was understood that Sandrene was to act as a salesman or agent for some other company in Ohio that could obtain the permit, and that the arrangement between the brewing company and Sandrene was as follows:

"That the firm through whom he (Sandrene) was going to operate as agent, would become our dis-

tributors, but since we did not know them, he would guarantee their account up to a thousand dollars, and that he had made an arrangement with them that he, solely, was to distribute our product. The distributor was not to make any distribution of our product, but he was to be their sole agent and distribute this business. So that with that arrangement, that he would try that for three months. If it worked out, in his opinion, he would continue to go on. If it did not work out, then he would come in and fold up.''

The purpose of this claimed arrangement is apparent. Sandrene could not act as a distributor for Auto City Brewing Company in Ohio without a distributor's permit—and he could not obtain one. The Ohio liquor control act (Ohio General Code, § 6064–14; 117 Laws of Ohio [1937–1938], p. 636) provides that no person in that State shall possess for sale, sell, or transport any beer in that State, or import any beer into that State for delivery, use, or sale, unless he is the holder of a permit issued by the department of liquor control. Lemke admitted that no mention was made of the General Distributing Company in any negotiations with Mr. Gruich, and that Sandrene was acting as the agent of the General Distributing Company in these transactions. The record bears out the conclusion that Gruich did not know that the brewing company had made the General Distributing Company its distributor in Ohio, or that it had been selling beer to the distributing company, until the brewing company demanded payment from him on his note. The substance of the brewing company's claim is, therefore, that Sandrene guaranteed verbally to pay for beer sold to the distributing company, which could not be sold directly to Sandrene in Ohio, and that Gruich guaranteed to pay for it if Sandrene did not do so. Through this claimed arrangement, the Auto City

Brewing Company seeks to obtain the benefit of the claimed guaranty, and seeks to avoid the effect of the Ohio law which prevented it from selling and delivering beer to Sandrene himself in Ohio.

If either Gruich or Sandrene can be charged with the duty to pay for the beer sold to the General Distributing Company, it must be because of some agreement, contract, or promise to that effect. Under the Michigan statute of frauds, this must be an agreement, contract, or promise in writing, or some note or memorandum in writing, to that effect, signed by the party to be charged or by someone duly authorized by him to do so. 3 Comp. Laws 1929, § 13417 (Stat. Ann. § 26.922). While the absence of such a provision in writing was necessarily in the case because of the claim relied upon by the brewing company, the record is not clear whether Gruich raised this issue in the court below. It was referred to, however, by the circuit judge during the hearing, and in his opinion wherein he held that there was nothing in writing to comply with the law in regard thereto. As we view the case, decision does not depend upon the answer to this question.

The arrangement whereby the Auto City Brewing Company was in the first instance to furnish money or credit to Sandrene, and aid him in obtaining a distributor's permit, was in direct violation of the Michigan liquor control act. Act No. 8, § 31, Pub. Acts 1933 (Ex. Sess.) (Comp. Laws Supp. 1940, § 9209–46, Stat. Ann. § 18.1002). In this State, a manufacturer of beer cannot legally aid or assist any vendor of beer by gift, loan of money, or any other valuable thing, in obtaining a license, and it is equally unlawful for any vendor of beer in this State to accept the same. Act No. 8, § 30, Pub. Acts 1933 (Ex. Sess.) (Comp. Laws Supp. 1940, § 9209–45, Stat. Ann. § 18.1001). One who contracts with a

brewing company in this State, contrary to these provisions, cannot maintain an action to recover for money expended for labor and material. The contract is void. *Turner* v. *Schmidt Brewing Co.*, 278 Mich. 464. The manufacture, sale, transporting, importing, or possession of alcoholic liquor by any person in this State who has not complied with the provisions of the liquor control act is unlawful. Act No. 8, § 32, Pub. Acts 1933 (Ex. Sess.), as amended by Act No. 281, Pub. Acts 1937 (Comp. Laws Supp. 1940, § 9209–47, Stat. Ann. 1941 Cum. Supp. § 18.1003).

Similar laws obtain in the State of Ohio. In that State, no person can legally sell or transport beer, or import beer into the State, without a permit from the department of liquor control of that State. The Ohio statutes forbid extending credit, as in Michigan. Ohio General Code, *supra*. It is apparent that Sandrene himself could not legally sell and distribute the product of the Auto City Brewing Company in his own name either in Michigan or in Ohio. He had no permit from either State. The arrangement under which the Auto City Brewing Company seeks to recover from Gruich, as guarantor of Sandrene's claimed liability, is a plain subterfuge to escape the purport of the statute law of both States.

The brewing company apparently adopts the theory that neither the statute law of Michigan, nor that of Ohio, bears upon the case at bar because the beer was shipped from Michigan to the distributor in Ohio in interstate commerce. Previous to the adoption of the 21st Amendment to the Constitution of the United States, that theory was upheld by the weight of authority. See note in 110 A. L. R. pp. 931–950, inclusive. The 21st Amendment to the Constitution of the United States, after repealing

the prohibition amendment (art. 18), provides as follows:

"Sec. 2. The transportation or importation into any State, Territory, or possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited."

Since the 21st Amendment was adopted, this question has been set at rest by the United States Supreme Court in *State Board of Equalization of California* v. *Young's Market Co.* (1936), 299 U. S. 59 (57 Sup. Ct. Rep. 77, 81 L. Ed. 38), rehearing denied (1936), 299 U. S. 623 (57 Sup. Ct. Rep. 229, 81 L. Ed. 458). The court there held that a State may forbid all importations of alcoholic liquor which do not comply with the conditions prescribed by State laws, if the State allows imported liquors to compete with domestic on equal terms. Under such conditions and by virtue of the 21st Amendment, such State laws are no longer held to be in conflict with the commerce clause or the equal protection clause of the Constitution of the United States.* *Indianapolis Brewing Co.* v. *Liquor Control Commission*, 305 U. S. 391 (59 Sup. Ct. Rep. 254, 83 L. Ed. 243). The State of Ohio has held that the exaction of a license fee for the privilege of importing beer into that State was not a violation of the commerce clause of the Constitution of the United States. *State, ex rel. Superior Distributing Co.,* v. *Davis,* 132 Ohio St. 308 (7 N. E. [2d] 652). It has also been recently held that the Michigan liquor control act, and the commission regulation requiring outstate breweries to be licensed in this State and to pay a fee, warehouse rates, and inspection fees, do not violate either the commerce clause or the equal protection clause of

---

* Article 1, § 8, clause 3, and Am. 14, § 1.—Reporter.

the Constitution of the United States. *Zukaitis* v. *Fitzgerald,* 18 Fed. Supp. 1000. Neither Sandrene nor the General Distributing Company is a party in the instant case; but, if it should be held that the arrangement claimed by the brewing company is in violation of State laws, the commerce clause and equal protection clause of the Constitution of the United States do not afford relief from the consequences of such violation.

In the case at bar, the record establishes that Gruich understood that the Auto City Brewing Company was to set Sandrene up in business as a distributor of its beer in Ohio, and that he (Gruich) was guaranteeing Sandrene's payment for that purpose to the extent of $1,000. The record does not convince us that Gruich agreed to become guarantor for payment of beer sold by the Auto City Brewing Company to whatever unknown distributor in Ohio might be licensed to sell the brewing company's beer in that State. While it is true that Sandrene signed orders and correspondence to the brewing company relating to beer to be shipped to Ohio, the brewing company knew, and in fact relies upon the claim, that Sandrene was merely acting as an agent for the General Distributing Company. The Auto City Brewing Company must rely solely on its claim that Sandrene promised to pay the brewing company for the beer it sold to the General Distributing Company, and we cannot reasonably conclude from the record before us that Sandrene ever made such a promise either in writing or otherwise. The circumstances of the entire matter negative such a conclusion.

It is not claimed by the brewing company that any money or actual consideration for the note and mortgages passed from the brewing company either to Sandrene or Gruich, except the product sold.to

the General Distributing Company. We find that there was an entire failure of consideration for the note and mortgages. They are still held by the original payee and mortgagee. The decree entered below cancels both, and enjoins the Auto City Brewing Company from prosecuting the action of replevin. With this, we are in accord.

Decree affirmed, with costs to appellee.

CHANDLER, C. J., and NORTH, STARR, BUTZEL, BUSHNELL, and SHARPE, JJ., concurred. WIEST, J., did not sit.