Per Curiam.

Appellant advances numerous arguments attacking the validity of the above statute and regulation, but, in essence and as confined to the facts of the instant case, its contentions are that Section 4301.13, Revised Code, is unconstitutional; that Section 1, Article VII of Regulation 3 of the Board of Liquor Control, is unconstitutional in that it is arbitrary, discriminatory and in derogation of the power delegated bv the General Assembly through Section 4301.13; and that Section 1, Article VII of Regulation 3, is in contravention of Section 8, Article I of the Constitution of the United States — the “interstate commerce clause.”
It is apparent at the outset that most of appellant’s contentions may lie answered in the language, unanimously adopted by this court in the per curiam opinion in the case of Frankenstein v. Leonard et al., Board of Liquor Control, 134 Ohio St., 251, 16 N. E. (2d), 424, that “extended discussion is unnecessary inasmuch as most of the contentions * # * require merely a recital and reapplication of fundamental and decisive pronouncements already made by this court,”
*64 The most cursory examination of that and the following cases indicates clearly the practically unlimited extent of legislative power to control the manufacture, distribution and sale of alcoholic beverages which is recognized by the law, and the great extent to which this power has been allowed to be exercised and delegated without judicial interference: State Board of Equalization of California v. Young’s Market Co., 299 U. S., 59, 81 L. Ed., 38, 57 S. Ct., 77; Ziffrin, Inc., v. Reeves, Commr., 308 U. S., 132, 84 L. Ed., 128, 60 S. Ct., 163; United States v. Frankfort Distilleries, Inc., 324 U. S., 293, 89 L. Ed., 951, 65 S. Ct., 661; State, ex rel. Wetterstroem, v. Department of Liquor Control, 129 Ohio St., 185, 194 N. E., 372; State, ex rel. Zugravu, v. O’Brien, 130 Ohio St., 23, 196 N. E., 664; Frankenstein v. Leonard, supra; and State, ex rel. Superior Distributing Co., v. Davis et al., Tax Commission, 132 Ohio St., 308, 7 N. E. (2d), 652.
From the law expounded in those cases, it is seen that the liquor industry of any state in the union exists, if at all, only at the will and pleasure of the people of that particular state, either by popular vote or through their legislative body, and then only according to the laws prescribed by such people or legislative body and the rules and regulations of any administrative body to which authority has been lawfully delegated. And it is of prime importance to recognize the fact that control of its liquor industry by a state is not subject to the constitutional sanctions and limitations ordinarily attendant to an exercise of its general police power by a state.
The liquor industry of the entire nation was divested of any of such constitutional guaranties when it was divested of legal existence by the Eighteenth Amendment to the Constitution of the United States, and the Twenty-first Amendment cannot be said to have returned to the liquor industry any of the protection and guaranties which may have existed prior to the passage of the Eighteenth Amendment.
See United States v. Frankfort Distilleries, Inc., supra (324 U. S., 293), wherein Justice Frankfurter, in a concurring opinion, said:
‘ ‘ The Twenty-first Amendment made a fundamental change, as to control of the liquor traffic, in the constitutional relations between the states and national authority. Before that amend *65 ment — disregarding the interlude of the Eighteenth Amendment —alcohol was for constitutional purposes treated in the abstract as an article of commerce just like peanuts and potatoes. As a result, the power of the states to control the liquor traffic was subordinated to the right of free trade across state lines as embodied in the Commerce Clause. The Twenty-first Amendment reversed this legal situation by subordinating rights under the Commerce Clause to the power of a state to control, and to control effectively, the traffic in liquor within its borders. * *
“* * * if a for jqs own sufficient reasons deems it a desirable policy to standardize the price of liquor within its borders either by a direct price-fixing statute or by permissive sanction of such price fixing in order to discourage the temptations of cheap liquor due to cutthroat competition, the Twenty-first Amendment gives it that power and the Commerce Clause does not gainsay it.”
See, also, State, ex rel. Zugravu, v. O’Brien, supra (130 Ohio St., 23), wherein it was found by this court, with regard to the Liquor Control Act, that, “under its statutory provisions, natural and artificial persons may engage in the liquor traffic only to the extent to ivhich they are permitted to do so.”
From this it is undeniable that the General Assembly of Ohio has the power to prescribe that there shall be a minimum price established for the sale of any particular liquor, and that it may delegate the fixing of such minimum price to a properly constituted agency such as the Ohio Board of Liquor Control.
Thus, by the enactment of Section 4301.13, Revised Code, the General Assembly has merely exercised a power which it undeniably has.
Appellant, however, raises a further question by arguing that Section 1, Article VII of Regulation 3, is invalid because it contravenes a stated legislative policy or purpose in establishing minimum prices on bottled wines in Ohio. It contends that such a legislative purpose is expressed by the title of the act wherefrom Section 4301.13 was derived, i. e., Amended Substitute Senate Bill No. 159, which title is as follows:
“AN ACT
“To provide for the sale of bottled wine under fair trade regulations and for that purpose to authorize the Board of *66 Liquor Control to adopt such regulations, and to enact supplemental Section 6064-3a [Section 4301.13, Revised Code].”
Appellant contends that the purpose of the General Assembly was to limit the Board of Liquor Control in determining the minimum prices at which bottled wine may be sold to a formula whereby the only determination of such minimum price would be based on “fair trade” principles.
The court notes, however, that the fundamental purpose of the Liquor Control Act in the first instance is to absolutely control the liquor industry in the state of Ohio as a matter of social and public policy, and that its purpose is not merely to provide “fair competition” between liquor distributors or retailers.
It is at once apparent that appellant’s view of legislative restrictions on the delegation of power to the board to fix minimum prices on bottled wine would preclude the board from any consideration of social or public policy in reaching a “fair trade” minimum price. This would, of course, be in direct contravention of the basic and fundamental tenets of the entire liquor control program, and clearly such an incompatible purpose should not and will not be read into legislation on this subject.
Nowhere in the body of the act as enacted by the General Assembly does there appear any reference to Ohio or any other “fair trade” legislation, and if the General Assembly had intended the Board of Liquor Control to be guided thereby it would surely have so stated in no uncertain terms.
It is our conclusion regarding this contention of appellant that the board, in formulating Section 1, Article VII of Regulation 3, did not abrogate or extend the powers delegated to it by Section 4301.13, Revised Code, and that such regulation is a valid exercise of such delegated power.
Objection is also made to the delegation of power to fix minimum prices for the sale of bottled wine on the basis that such delegation includes no legislatively prescribed standards. Certainly the police power of the state with respect to liquor control is at least coextensive with the police power of the state with respect to public health, and in the second paragraph of the syllabus of Weber v. Board of Health, 148 Ohio St., 389, 74 N. E. (2d), 331, this court said:
“Where a law relates to a police regulation for the protec *67 tion of public health, and it is impossible or impractical to provide specific standards, and to do so would defeat the legislative object sought to be accomplished, such law is valid and constitutional without providing such standards. ’ ’
Considering the changing social and economic factors involved when dealing with the liquor industry and the fundamental purpose of the Liquor Control Act, it is not unreasonable to conclude that the fixing of rigid standards by the General Assembly as to the minimum price of bottled wine might well defeat the legislative purpose in enacting the measure in the first instance.
It is, then, neither surprising nor unlawful that the General Assembly vested the Board of Liquor Control, which is in constant touch with the situation in Ohio, with discretion regarding this particular piece of legislation.
In conclusion, we find that the enactment by the General Assembly of Section 4301.13, Revised Code, delegating authority to the Board of Liquor Control to establish minimum prices for the sale of bottled wine in Ohio, was within the general powers of the General Assembly concerning its control of the manufacture, distribution and sale of liquor in the state of Ohio; that Section 4301.13, Revised Code, is not unconstitutional because of a lack of prescribed standards for the establishment of such minimum price; that Section 1, Article YII of Regulation 3 of the Board of Liquor Control, including therein the formula established by the board for reaching a minimum price for the sale of bottled wine in Ohio, is neither in contravention nor in excess of the power granted that board by the General Assembly through Section 4301.13; and that Section 4301.13, Revised Code, is not violative of Section 8, Article I of the Constitution of the United States, the “interstate commerce clause,” since that clause of the federal Constitution does not apply at all to state liquor traffic.
It follows that the judgment of the Court of Appeals must be, and it hereby is, affirmed.

Judgment affirmed.

Weygandt, C. J., Zimmerman, Stewart, Bell, Taet and Matthias, JJ., concur.
Herbert, J., dissents.